Good morning. May it please the Court, I'm Dennis McCubb and I represent the appellant, Rosewood Care Center, in this matter. This case involves a case under the Nursing Home Care Act against Rosewood Care Center, a nursing home in Edwardsville, Illinois. It was brought by Margaret Schwab, who expired during the action, and Thomas Schwab and Donna Heal were appointed to represent the plaintiff in this matter. The case was tried in circuit court in Edwardsville, Madison County, and after 21 hours of deliberation, the jury delivered a verdict of $58,878 in favor of the plaintiff. All of that money on the verdict was assessed as medical expense. There was no award for pain and suffering, loss of normal life, or any other itemized amount on the verdict form. The plaintiffs appealed that decision to this Court and the verdict was affirmed on a Rule 23 order. The plaintiffs contended it was inconsistent because it didn't award any money for pain and suffering, but the Court, in its opinion, recognized that Margaret Schwab's condition and her injury was such that the jury could have reasonably found no additional injury resulted from the fall she sustained at Rosewood and no additional pain and suffering resulted from that. After that was affirmed, the plaintiffs' attorneys went back to the trial court and asked for an award of attorney fees under the Nursing Home Care Act. And the Court, after an evidentiary hearing, awarded the plaintiffs' attorneys every amount that they asked for, $175,548 in attorney fees plus around $6,000 in cost. In this appeal, the appellant contends that the trial court abused its discretion in making that award, which was over three times the amount of the verdict, because it failed to consider proper factors that it needed to consider under the existing law in order to make an award of attorney fees. It unreasonably abused its discretion when it unreasonably found that plaintiffs' counsel's hourly rates were reasonable, and the trial court also approved excessive, improper, and inadequately documented charges. It's noteworthy that the… What were those? Did you put on proof of the inadequate, excessive, unnecessary charges? Yes, but primarily they were in the plaintiff's bill, and it was called to the Court's attention that the plaintiff's counsel had spent time pursuing probate matters on behalf of the plaintiff's representatives. He had also charged, just as another example, he had… This was a case that was referred to him by another counsel, and there were charges on his bill he was asking for reimbursement for, for meetings with the other counsel and for letters to the other counsel confirming their referral fees. And it was Rosewood's position that those kinds of charges should not be paid for by Rosewood. Do you dispute the hourly rate? Pardon me? Do you dispute the hourly rate? Yes, yes, Your Honor. And can you explain why you dispute the hourly rate? Firstly, there was no competent evidence other than self-serving testimony by the plaintiff's counsel that they were entitled to an hourly rate of $300 an hour, and that's the one we dispute as the lead counsel's charges, Mr. Jensen, $300 an hour. He testified that was his fee, that's what he was entitled to, and that's what was reasonable. Although, on cross-examination, he admitted that no client of his had ever paid him an hourly rate of $300 an hour. Under the law, Rosewood's position is that it was incumbent on the plaintiff to prove what the hourly rate was in the community. But I think the most important thing… Well, there was testimony as to that, wasn't there, from Stacey Yando as the expert witness for the plaintiffs? Yes, and that's another interesting aspect of the case. Stacey Yandle admitted on cross-examination that she had only tried one nursing home case to verdict. She testified that she had handled about 50. She tried one to verdict. She tried one to verdict. That's an accurate description of her testimony, isn't it? I don't remember the 50 that she's handled, but she tried one to verdict, which would have put her in the position to petition for fees to the court. She never testified that she had been paid that amount. She testified that she had charged that amount, but she had never testified that she had been paid that amount. In the defendant's position, what is a reasonable rate for this case? I don't know what the plaintiff's reasonable rate is, but what I can say is the trial court did… No, in your opinion, in the defendant's position, what would a reasonable rate be? An hourly rate. A reasonable hourly rate would be no more than what was charged by the defense attorneys, who were attorneys from a preeminent firm, a big firm in St. Louis. And what was their hourly rate? The lead counsel charged $265 an hour for trial time, and the second chair counsel charged, I believe, $216 an hour. So that would be reasonable for this type of a case? I'm not saying that's reasonable for this plaintiff. No, no, no. Well, are you suggesting that the rate should be different for a plaintiff's attorney and a defense attorney? I'm suggesting that the court should determine all of the factors it needs to determine to determine what a reasonable fee is. Should there be a different rate for a plaintiff's attorney and a defense attorney? In some cases, yes, because… Give me an example of why that should happen. An example might be the standing of that particular attorney in the community, what that attorney is able to command for an hourly rate. That would pertain to any attorney, be it a plaintiff's attorney and another plaintiff's attorney. I'm talking about the individual lawyer. Well, in this case, Your Honor, I think the court had to decide what this individual lawyer's hourly rate should be, what was reasonable for this particular lawyer, because it was this particular lawyer who was asking for the fee. I thought you were suggesting that the court should use a different analysis for a plaintiff's attorney and a defense attorney. No, sir, and I'm sorry if I conveyed that. That's not the case. The same analysis applies. But in this particular case, the reason why we're saying the court abused its discretion is because it did no analysis. It's clear from the court's opinion that the only thing that the court used as a benchmark for what the plaintiff's lawyer should be paid was the total amount of fees paid by the defendant. The order doesn't really reflect that, does it? You've got the first paragraph that deals with other factors, and you've got the latter part of the, I guess it's the second paragraph, as to the credibility of the testimony of plaintiff's attorney and their expert, noting that the court notes the defendant failed to produce contrary evidence. The order actually indicates that the circuit court took into account the totality of the circumstances, argument, pleading, and everything else of the case, doesn't it? It does say that, Your Honor, but if you look at the transcript of the proceeding over and over again, the court came back to this factor that defendant had paid more in attorney fees than the plaintiff was asking for, and therefore, how could the defendant challenge this amount? And over and over again in the transcript. And although there is some general reference to totality of circumstances and other circumstances in the order, the only thing that's mentioned in there specifically is the amount that the defendant's paid for attorney fees. And if you look at that plus what's in the transcript, it's pretty clear that that was the primary basis on which the court made its decision. And the case law requires more scrutiny. Well, basically what you're suggesting is if a circuit court, or if this court, concentrates in its questioning on a particular factor, that must be the basis upon which the court makes its decision. Even though there are other factors involved, the order of the court indicates other factors, and other evidence or other factors were presented either in evidence or an oral argument, but because the court followed up in questioning and concentrated in its questioning on a particular factor, that had to be the deciding factor in the case. Is that what you're positing to this court? No, sir. But if the review of abuse of discretion is to have any meaning whatsoever and to be anything other than a rubber stamp, I think the court has to review what's specifically there and not try to guess what's meant by general statements about, I consider all the circumstances. And what's specifically there, and what's in the transcript over and over again, is defendant paid X amount for attorney fees, and therefore defendant shouldn't object to this fee petition. And those factors are not what the case law asks for in terms of scrutiny on this case. And after all, the plaintiff in this case is asking for a fee award of three times the amount of the verdict. So should it get some extra scrutiny in terms of its reasonableness? Plaintiffs always dwell on the Burlak case, which awarded $85,000 on an $11,000 verdict, and the language in there that says that in a Nursing Home Care Act case the award does not have to be proportional. And we don't dispute that, but the real holding of the Burlak case was that the award has to be reasonable. And in this case, the reasonableness was determined primarily by the amount that the defense paid in its attorney fees. And there's not one case in Illinois that says that that's a proper measure to determine the plaintiff's attorney fees. And if you look at some of the federal cases, which the Burlak case and the Raff case, which was decided in this court, were modeled after the federal fee-shifting statutes in civil rights cases and so on, it says the Mirabal v. General Motors case cited at page 12 of the appellant's brief, the court looked at this factor and found that plaintiffs can refuse to settle except on outrageous terms and could force defendants to incur substantial fees, which plaintiff then later uses as a basis for his own fee claim. And that's exactly what happened in this case. Plaintiffs' only demand in this case came at trial for $850,000. Plaintiff asked the jury for $1 million. There was no amount that Rosewood could have reasonably offered for settlement that would have settled the case that wouldn't have involved overpaying based upon Rosewood's assessment of the case. Rosewood was stuck defending the case. Was there a counteroffer? No, there was not. Rosewood was stuck responding to the plaintiff's efforts on this case and had no real control over the amount of the attorney fees that had incurred. The only way to have cut that off would have been to pay an unreasonable settlement. Did you present any evidence by an expert that the fees charged by the plaintiff were unreasonable? There was no evidence of that. It's not the defendant's burden of proof to prove that they were unreasonable. The case law... Would have been helpful, wouldn't it? Plaintiff says it's this, defense says it's this, the trial court has something to balance. I think that the... That may have been true except for the fact that the trial court had the defendant's attorney fee bills in its possession which showed an hourly rate for the lead attorney of $265,000. Versus the plaintiff's which was $300,000.  And the second attorney was $216,000 versus $200,000. Yes. So we're $35 away on one and $10 away or $16 away on the other. I think that the amount is not as important as the court's failure to even consider that or failure to mention that at least in its order because it awarded... Your Honor, you have to consider that the court awarded every penny that the plaintiff asked for in this case. Every hour and the entire hourly rate without so much as considering what hourly rate was paid by the defendant. Only the gross amount that was paid by the defendant. In this case, the Nursing Home Care Act should not constitute a guaranteed income for plaintiff's attorneys. The Burlak case also mentioned the fact that the court should consider that there was a contingent fee in this case. There was a contingent fee contract for 40% of the award. Burlak also had some... How does that affect or help the defendant out in this case? It helps the defendant because the Nursing Home Care Act was originally enacted to shift attorney fees to the defendant on cases where the legislature thought that there might have to be a private attorney general to enforce the rights of the elderly. The Nursing Home Care Act enumerates a number of rights, including such things as being able to visit whomever you wish at your nursing home, being able to have control of your own funds, things such as that that wouldn't produce much of a verdict. The Burlak case itself is distinguishable from this case because in Burlak, the injuries that the plaintiff suffered in Burlak were very minimal compared to this case, at least on its face. Burlak fell out of a wheelchair and had some bumps and bruises and a small cut, and the court in Burlak said that wouldn't have been enough to incentivize a competent attorney to take the case. But in this case, the plaintiff took the case on a contingent fee, knowing that Mrs. Schwandt suffered a fall and fractured her neck and had $180,000 in medical bills as a result of that. That's what the plaintiff thought going in. So there's no question but that that case would have incentivized any attorney to take the case without consideration. Does it make any difference to you, counsel, that the statute says that the attorney fees shall be paid to the patient? I'm sorry? That the attorney fees shall be paid to the patient. Does that have any significance at all to you, as opposed to the statute doesn't say the attorney fees should be paid to the attorney, it says the attorney fees should be paid to the patient. Does that have any significance to you? I don't know how that particularly works as between the lawyer and the patient. Would that mean, for example, that the lawyer no longer takes his 40% or? Well, that's the question I'm going to ask. I don't know. Okay. I don't know. But in this particular case, unlike Berliak, the injuries were sufficient to incentivize any competent attorney to take this case. And so this is not a case where you have an elderly woman who suffered some very minimal injury from an improper transfer or bruising from somebody being a little too rough with her. And in order to vindicate her rights, she has an attorney do that and he files a claim and he gets some attorney fees on a minimal verdict. Thank you, counsel. Thank you. Counsel? May it please the court? I'm Gail Renshaw representing the appellate. This case is a very straightforward issue presented. It's a matter of looking at the record and the evidence that was presented and determining whether the trial court properly exercised its discretion in finding that the attorney's fees that plaintiff petitioned for were reasonable. And when you look at this record and the evidence that was presented, it cannot be said that there was an abuse of discretion. The order of the court to the two-page order sets out what he considered, which was everything in the record. We must presume that the judge knew the law so he knows the factors that are to be considered. And those factors are the nature of the case, difficulty or ease with which it's tried, the skill and the standing of the attorney, and the usual and customary charges in the community. Another factor that can be considered is what the opposing party charges. And the court did indicate that it considered that as one thing, the total amount that was paid by the defendant to its attorneys. There's nothing in the record, in the transcript, in the order, that suggests that that was the only thing the judge considered. I don't see how anyone can ask this court to say what the judge says in his order is not what he's saying, what he did. So clearly, there was evidence presented on all those various factors supporting the petition. As for the defendant's argument that the amount of the verdict should be proportionate with the amount of the fees, there is no legal requirement of that. In fact, it would frustrate the purpose of the Nursing Home Act. When you, Judge Plummer, mentioned paid the patient, that says to me that that act is there to encourage patients to seek redress for any violations. Well, does that mean that you take the $58,000 in damages, add $175,000 to that, and then put your 40% on top of that, and that's what your firm gets paid? No. No. You get what you petitioned for and what the court awards. So you get 40% of the $58,000 plus the $175,000? No. Because that 40% would be based on the contingency contract. If you got a million-dollar verdict, you would get 40% of the million dollars? I mean, you pick and choose which one's more advantageous? Well, I think that you do have that option. But in this case, as I was saying, the contingency contract would be something that is considered, but it's not added in or deducted. Why couldn't you construe the language? Of course, it's not one of the issues here. Why couldn't you construe the language, pay to the patient, and take, as I said, the amount of attorney fees plus the amount of damages, which was all recovered for the benefit of the plaintiff, and then take 40% of that? Would not that be the fair way to do it? And honor your contractual obligation that was set forth in the contingency fee contract. But then that would defeat the whole concept of what's reasonable, and it would just say that the only thing that means reasonable is what you had in the contract. And the whole purpose of having this hearing and presenting the evidence is to show what was reasonable. But you contracted for 40% and rolled the dice. If it was a million-dollar verdict, you would get the windfall that way, presumably, right? If the court found that the reasonable attorney fees were $175,000 and it was a million-dollar verdict, you'd get $400K. So you would get a windfall of a couple hundred thousand there. Well, with all due respect, I think you're reading something into the statute that's not there, and that if that was the intent, there would have been some kind of indication that if you had that contract, you could not proceed. I'm just saying that, you know, in the context of this act, that maybe a contingency contract overlooks that portion of attorney fees and the parties contracted over and above what the statute said. But the parties and what they contract has nothing to do with petitioning the court for the fees under the act. And since there's no specific limit in the act to a contingency, I don't think that they – No, as I've referenced, this doesn't have a whole lot to do with the argument that counsel's making as far as the reason for this. I'm just curious as to how this would affect other types of cases. Well, I think that, you know, the parties – it's between the parties and what they determine is going to – But it's your position that the attorneys get to pick the most advantageous. If the party percent would be more advantageous contingency basis, they would pick that naturally as opposed to what the trial court has determined to be the reasonable attorney fees. Yes, because I think that the act is there to have people seek redress. And if you have to go through a nine-day trial and – Sure. This was a very complicated case. Let me ask you this, get back to some of the reissues here, not on that part of it. Was it reasonable and necessary to have six amended complaints? And if so, why was that reasonable to have six amended complaints? All right. I think if you examine the record, you'll see that the majority of these – there were really no substantive amendments. They were adding respondents in discovery, then adding them as defendants. As discovery proceeded, some of them were dismissed when it was learned that there wasn't liability. One of the amendments was to add a daughter as a co-administrator, and one was to – when the plaintiff died during the – the resident died during the proceeding, it changed the name of the case. So these are – you know, these are not major substantive changes at all. Does the record, counsel, reflect that these – that the preparation and research for the six of them complaints didn't amount to a whole lot of hours? It's on the statement. You know, there was an itemized statement presented as evidence, and it was testified to by the attorney who – who testified what he did in accordance with his statement. The trial attorney, Eric Jensen, testified to what he did and Liz Parker did. Now, then, the key thing here is that – Well, the drafting and the filing of the six amended complaints, was that – can you give me any idea about what percentage of the bill that would have been attributable to? Oh, very minor. Very minor. Okay. The bill is very long because, like I said, it's a very complicated case. And so back to the other evidence, and the critical evidence here is we had an expert. And Stacy Yandel was qualified as an expert. Why did you have an expert that only tried one nursing home care? Well, trying the case is not – the nursing home case doesn't necessarily mean she's not an expert. She has handled over 50 cases. She speaks at seminars on nursing home cases. She's been in the community for years, and she was familiar with plaintiffs' attorneys and their reputation. So she testified to all the critical things, to their skill and understanding and reputation, and to the usual and customary charges. She testified that the $300 was reasonable. I mean, surely there's not just going to be one figure that's reasonable, especially when you're talking about abusive discretion. So there's a range. You know, it could be $250, $300. But she testified it was reasonable. And then defense put no evidence on to contradict that. They're saying it's our burden to prove it. Well, we did. We put on the evidence. And what defendant did was cross-examine our witnesses, but that became an issue of credibility. And so it was for the court to decide. And the court specifically found that the witnesses were credible. So based on all of this evidence, expert testimony, the attorney's testimony, the exhibit with detailed statements, it cannot be said that there was an abusive discretion. Let me ask you a question about the Burlap case. It says that the existence of a contingency fee agreement is a relevant factor, correct? Did the trial court in its discretion reference the contingency fee agreement in finding that the fees were reasonable? I don't think it expressly said that, but it said it considered all the evidence, all the motion, and the contradict was part of the evidence. So based on all these arguments and the evidence, we're asking the court to affirm the judgment of the trial court. Thank you. Thank you, counsel. Counsel? Thank you. Your Honor, you asked me if the defense had any experts to testify, and I said no. But one of the things that the plaintiffs put into evidence in this case was Exhibit 6, which was the Missouri Bar Economic Survey. And Stacey Handel testified that the fees applied to the metropolitan St. Louis area. If you look at Exhibit 6, Your Honors will see that only 10%, less than 10%, 9% of the attorneys in that survey in Missouri charged more than $300 an hour for trial work. And only 12% of the attorneys were in that $250 to $300 range. So based upon that survey, which plaintiffs' attorneys put into evidence, that would put these plaintiffs' attorneys in a very elite group to charge $300 an hour. It's $35 an hour more than you charged, or the defense charged. I understand, Your Honor, but defense attorneys were a very elite group. Partners at Sandburg Phoenix, a partner who does nothing but defend nursing homes. That's his specialty. That's why he's able to command those fees. In terms of Stacey Handel's testimony, the only way that you get paid on a Nursing Home Care Act case is to win one. She never testified that she had actually ever been paid the $300 an hour. She testified that she had tried one to verdict. Handling $50 doesn't put you in any position to judge what the fee should be, because there was no fee petition on any of those cases. She also was unaware of the Martindale-Hubbell ratings of the plaintiffs' lawyers. She was unaware of how many cases they had ever tried. She was unaware of, generally, their experience. Her testimony boiled down to, yeah, I know these guys, and I know they're competent, great attorneys in the community. That was her testimony. The six amended complaints Your Honor asked about. A number of those complaints, and a great deal of time was spent in this case, deposing 29 witnesses. And the amendments were done adding and dropping parties, none of whom could be liable under the Nursing Home Care Act. There's only three classes of people who are liable. The owner of the nursing home, the licensee of the nursing home, and the administrator of the nursing home. Nurses were sued. Other people involved in the nursing home were sued, and they were dropped out once there was discovery done. But there were 29 witnesses deposed, almost none of whom were called by the plaintiff at trial. The only evidence in this case, in terms of the hourly rate, was self-serving testimony that I'm worth, the plaintiff's lawyer saying I'm worth $300 an hour, I'm worth $200 an hour. But none of them had ever charged anybody $200 or $300 an hour. There was not one bit of evidence in the case that any of them had ever actually billed a client and been paid $300 an hour for any kind of a case. Based upon all of those factors, we feel the court used its discretion and merely rubber-stamped the plaintiff's fee petition in this case, and that it created a completely unreasonable and unfair result for the nursing home. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement.